IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| UNITED STATES OF AMERICA, | Case No. 16-cr-00744-DKW-6 |
|---|---|
| Plaintiff, | **ORDER (1) DENYING DEFENDANT JEREMIAH MATAU'S SECOND MOTION TO SUPPRESS WIRETAP EVIDENCE, AND (2) DENYING AS MOOT THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** |
| v. | |
| JEREMIAH MATAU, | |
| Defendant. | |

This matter comes before the Court with the filing of Defendant Jeremiah Matau's *second* motion to suppress wiretap evidence ("second motion"). Dkt. No. 719. While the *title* of Matau's second motion appears to acknowledge that he has already moved for the exact same relief he now seeks, *nowhere* else in the second motion does Matau recognize that he has done so. Indeed, even at oral argument, Matau refused to concede the evident fact that the Court has already addressed and denied Matau's *first* motion to suppress that challenged the *exact same* wiretap applications based on the exact same alleged absence of necessity. As such, the Court construes Matau's second motion as seeking reconsideration. Because Matau's second motion does not present *any* basis for reconsideration, it is DENIED. The Court, therefore, also DENIES the government's motion to dismiss the second motion, Dkt. No. 725, as MOOT.

# **LEGAL STANDARDS**

As the Court has already set forth in its earlier order, the standard of review for a motion to suppress based on necessity is as follows:

> Taken together, "§§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order." *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988). As such, "the Government must show that every wiretap it seeks is necessary." *United States v. Christie*, 825 F.3d 1048, 1066 (9th Cir. 2016).
>
> In *United States v. Rodriguez*, the Ninth Circuit describes the necessity analysis as a two-part assessment: First, under 18 U.S.C. § 2518(1)(c), a wiretap application must include a "full and complete statement" as to the "facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued," including whether traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try. 851 F.3d 931, 938. The court reviews *de novo* whether the application includes such a statement. *Id.*
>
> Second, if the affidavit meets the "full and complete statement" requirement, the court then reviews the issuing court's conclusion that the wiretap was necessary. *Id.* The issuing judge's decision that the wiretap was necessary is reviewed for abuse of discretion. *United States v. Lynch,* 437 F.3d 902, 912 (9th Cir. 2006) (*en banc*); *United States v. Blackmon,* 273 F.3d 1204, 1207 (9th Cir. 1986)).

11/6/2018 Order at 4-5 ("the 2018 Order"), Dkt. No. 556.

In the context of a motion seeking reconsideration of a suppression order, a district court's authority to revisit such an order "is within its sound judicial discretion." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013) (quotation omitted). Here, pursuant to Criminal Local Rule 12.3, the Court elects to use Civil Local Rule 60.1 (Rule 60.1) to guide its exercise of discretion.

Pursuant to Rule 60.1, grounds for reconsidering an interlocutory order, such as the 2018 Order, *see United States v. Eccles*, 850 F.2d 1357, 1359 (9th Cir. 1988) (explaining that an order denying or granting a motion to suppress is interlocutory), include discovery of new material facts previously unavailable, an intervening change in law, or manifest error of law or fact.

## BACKGROUND

The relevant factual and procedural background up to the date of the Court's 2018 Order is set forth therein. *See* Dkt. No. 556 at 2-4. For present purposes, and at the risk of some redundancy, the Court notes that the two wiretap applications (and accompanying affidavits) at issue here are dated June 13, 2016 and July 12, 2016. At that time in 2016, the government was in the midst of a two-year investigation into a narcotics conspiracy involving dozens of individuals, including Matau and Jeremiah Ieremia, a co-defendant in this case. Among other things, both applications sought surveillance of telephone numbers used by Ieremia. Respectively, those telephone numbers were identified as TT13, TT14, and TT15, *i.e.* the 13th, 14th, and 15th numbers that the government sought to tap during the course of its investigation. The affidavits in support of the June and July 2016 applications were prepared by Jeffrey Koch, a Special Agent with the Federal Bureau of Investigation (SA Koch), the case agent on the investigation. In both

affidavits, executed a month apart, SA Koch described the investigative techniques used, techniques not used, and the reasons those techniques were not used.

Apart from the foregoing brief summary, because the Court assumes the parties' familiarity, if not complete recognition, of the 2018 Order, this Order picks up with the findings and conclusions therein.

First, the Court found that the affidavits in support of the June and July 2016 wiretap applications contained full and complete statements of the traditional law enforcement techniques employed or considered. 2018 Order at 6-17. More specifically, the Court rejected Matau's argument that the repetition of information between the June 2016 affidavit and the July 2016 affidavit rendered the affidavits insufficient. *Id*. at 7-11. The Court further found that the two affidavits did not impermissibly "bootstrap[]" information related to one person (Laauli Amani) in order to justify the wiretapping of Ieremia's telephone numbers. *Id*. at 11-17.

Second, the Court found that there was no abuse of discretion in finding the June and July 2016 wiretaps to be necessary. *Id*. at 18-22. More specifically, the Court rejected Matau's argument that no meaningful attempts were made to employ traditional investigation techniques to surveil Ieremia, observing that the investigation of Ieremia included the use of pen register and trap and trace devices, wiretaps on at least one other telephone used by Ieremia, and wiretaps on telephones used by co-conspirators. The Court further observed that the use of wiretaps on

Ieremia's telephone numbers was not the first investigative step used by law enforcement, and it was not necessary to exhaust every conceivable investigative alternative prior to obtaining a wiretap. *Id.*

Because those were the sole arguments raised in Matau's first motion to suppress, the Court, therefore, denied the motion. *Id*. at 22.

Over 15 months after the entry of the 2018 Order, Matau filed the instant second motion to suppress. Dkt. No. 719. Matau states that he seeks "leave" to file the second motion "based on the government's failure to disclose evidence that is material to a motion to suppress, which should have been disclosed long ago pursuant to Federal Rule of Criminal [P]rocedure 16 and the Due Process Clause of the Fifth Amendment." *Id*. at 2.[1] Matau asserts that, without the evidence that should have been disclosed, he could not have filed the second motion to suppress. *Id*. Other than the foregoing, the only other mention of timeliness in the second motion is numerous footnotes therein stating when the evidence upon which the motion relies was provided to Matau. Notably, at no point does Matau attempt to explain why *any* of the evidence should have been "disclosed long ago" or why the *content* of the evidence itself was necessary to file the second motion.

---

[1] In order to have an accurate record, it is important to note that Matau has not properly sought *leave* to file a motion outside of the motion-filing deadline. Simply inserting the word "leave" into the body of the underlying motion for which leave is sought cannot, under any reasonable construction, be considered seeking leave. A construction that it could would render the requirement meaningless.

Instead, as noted above, the second motion proceeds as if the canvas upon which Matau writes is blank. In that regard, he makes the following arguments. First, Matau argues that the government lacked probable cause to intercept Ieremia's telephone calls in the June and July 2016 wiretap applications. *Id*. at 31-32. Second, Matau argues that the affidavit in support of the July 2016 wiretap application both made affirmative misstatements and withheld material information in failing to disclose that the government had made only minimal efforts to physically surveil individuals involved in the alleged drug conspiracy and, when efforts had been made, they were "highly successful." *Id*. at 32-35. Third, Matau argues that the affidavits in support of the June and July 2016 wiretap applications were misleading because, although they stated that seizures of cell phone data would not be useful, the government had not attempted that investigatory technique. *Id*. at 35-36. Fourth, Matau argues that the affidavit in support of the July 2016 wiretap application falsely claimed that the government could not locate important targets upon which search warrants could be executed. *Id*. at 36-38. Fifth, Matau argues that it was "entirely false" for the affidavit in support of the July 2016 wiretap application to state that the use of cell phone records would not be a promising method of identifying participants in the drug conspiracy. *Id*. at 38-39. Sixth, Matau argues that the affidavits in support of the June and July 2016 wiretap applications misrepresented the usefulness of subpoenas in obtaining information

because subpoenas resulted in the discovery of at least two key categories of evidence: wire transfer and flight records. *Id*. at 39-40. Finally, Matau argues that the June and July 2016 wiretap applications omitted any discussion about the use or attempted use of financial investigatory techniques or various law enforcement databases. *Id*. at 40-41. In the second motion to suppress, Matau also requests an evidentiary hearing to establish whether the purportedly false statements in the affidavits were intentional and/or reckless. *Id*. at 2, 41-42.

After the filing of the second motion, the Court scheduled a March 13, 2020 evidentiary hearing on the same. Dkt. No. 721. In doing so, the Court instructed counsel for the parties to provide witness and exhibit lists by March 9, 2020. *Id*. The Court also ordered the government to file an opposition to the second motion by March 9, 2020 with no reply. Dkt. No. 720.

On March 7, 2020, the government filed, in one document, both an opposition to the second motion to suppress and a motion to dismiss the same. Dkt. No. 725.[2] The government asserts that the second motion to suppress should be dismissed because Matau has failed to show good cause for filing the motion after the deadline

---

[2] In its filing, the government seeks leave to file an oversized brief in support of the same. Dkt. No. 725 at 2. Much like the request for leave noted *supra*, the insertion of the word "leave" in the government's opposition serves little meaningful purpose, given that the government has evidently filed its oversized brief prior to the Court granting the request. That being said, the government, at least, sought leave at some point. Matau, on the other hand, although filing a brief in support of the second motion to suppress well in excess of the permitted page limit, has still not sought leave to do so. *Compare* Local Rule 7.4(a) (permitting a brief of up to 25 pages in length), *with* Dkt. No. 719 at 5-42 (Matau's memorandum consisting of at least 37 pages). Matau's aversion to acknowledging rules, as well as governing legal standards, is troubling but consistent.

7

for doing so and because the motion does not rely upon any information disclosed to Matau since the filing of the first motion to suppress. Dkt. No. 725-1 at 10-35. Alternatively, the government asserts that the second motion to suppress should be denied for various reasons. First, the government argues that the wiretaps at issue here were "vital to the success" of its investigation, and it was not required to exhaust all possible traditional investigative techniques. *Id*. at 38-42. Second, the government argues that it was reasonable for the investigative agents to believe that wiretapping Ieremia's telephone numbers would get them closer to learning how drugs were being transported to Hawaiʻi. *Id*. at 42-43. Third, the government argues that the affidavits in support of the June and July 2016 wiretap applications accurately described the limitations of physical surveillance and cell phone tracking. *Id*. at 43-45. Fourth, the government argues that it could not execute search warrants on physical locations solely with the information it obtained from traditional investigative techniques. *Id*. at 45. Fifth, the government argues that the content of a telephone "account" provides less and different information compared to the content of a seized telephone. *Id*. at 19, 46. Sixth, the government argues that, although cell phone data had been useful in its investigation, it had not been able to fully identify all targets with such data. *Id*. at 46-47. Seventh, the government argues that, contrary to Matau's assertion, his cell phone was not subscribed to in his own name. *Id*. at 25-27, 47. Finally, the

8

government argues that neither wire transfer and flight records nor financial information would have shown that drugs were being trafficked illegally. *Id*. at 48-49. In its opposition, the government also opposes Matau's request for an evidentiary hearing, arguing that he has failed to make a "substantial preliminary showing" for relief. *Id*. at 36-37.

On March 9, 2020, counsel for Matau and the government informed the Court's courtroom manager that, respectively, they would not call any witnesses at the March 13, 2020 hearing. Nonetheless, on the same day, Matau filed an Exhibit and Witness List, listing, among other things, one witness for the March 13, 2020 hearing: SA Koch. Dkt. No. 727.

## DISCUSSION

### I. Motion to Dismiss, Dkt. No. 725

The Court turns first to the government's motion to dismiss. In noticeable contrast to the second motion, the government's motion to dismiss lays out in detail why none of the evidence upon which Matau relies is sufficiently "new" to justify the late filing of the second motion and how the government would be prejudiced by the same. *See* Dkt. No. 725 at 12-33. Nonetheless, despite the procedural infirmities of the second motion, the most expedient resolution of the second motion is to address the same on the merits. The Court therefore focuses the discussion below accordingly.

9

## II. Second Motion to Suppress

As an initial matter, Matau fails to properly frame the second motion. Specifically, Matau fails to acknowledge that this Court has already addressed Matau's first motion to suppress, found that SA Koch's June and July 2016 affidavits provided full and complete statements on traditional investigative techniques, and determined that there was no abuse of discretion in the issuing judges finding wiretaps to be necessary. To be clear, the 2018 Order addresses the exact same affidavits, the exact same wiretap applications, the exact same authorization orders, and the exact same finding of necessity that are raised in the second motion to suppress. Despite that, the second motion makes no mention of the legal principles regarding reconsideration of interlocutory orders or even the 2018 Order itself. Moreover, at the March 13, 2020 hearing on this matter, Matau was still unwilling to even acknowledge that reconsideration of the 2018 Order was an issue. Precisely why is unclear, given that, in the second motion, Matau purports to rely, at least in part,[3] upon evidence that has been provided to him since filing the first motion to suppress, a recognized basis for reconsideration. *See* Rule 60.1. Fairly construed, the second motion is based solely upon this ground.[4]

---

[3] In the second motion to suppress, Matau acknowledges that some of the evidence upon which he relies was provided to him *before* filing the first motion to suppress. *See* Dkt. No. 719 at 34 nn.5-6, 36 at n.9.

[4] It certainly does not rely upon an intervening change in the law or make any argument that manifest error of law or fact took place in the 2018 Order, the other recognized bases for reconsideration.

10

Nonetheless, as discussed below, the Court finds that none of the purportedly new (or even old) facts upon which Matau relies are *material* to the issues decided in the 2018 Order.

1. **<u>Probable Cause</u>**

While the vast majority of Matau's arguments are premised upon the necessity requirement, his initial contention is that the June and July 2016 wiretap applications failed to establish probable cause "that interception of the Ieremia cell phones would result in the discovery of calls concerning the details of how Ieremia and/or Matau were importing drugs to Hawaii."

Matau, however, misconstrues what probable cause means in the context of a wiretap application. It does *not*, as Matau appears to believe, mean that probable cause must exist with respect to how specific components of a drug trafficking crime are carried out, such as how drugs are being trafficked. Instead, as the wiretap statute itself states, there must be probable cause that (1) an individual is committing an enumerated offense, like drug trafficking, (2) said individual will use the telephone subject to the wiretap, and (3) communications concerning the offense will be obtained through the wiretap. 18 U.S.C. §§ 2518(3)(a), (b), (d). Matau makes no attempt to argue that the June and July 2016 wiretap applications did not establish probable cause of the foregoing. As a result, the Court rejects Matau's argument in this regard.

## 2. Omissions, Misstatements, and Falsities

The remainder of Matau's arguments concern various purported omissions, misstatements, and/or falsities in the affidavits supporting the June and/or July 2016 wiretap applications. The Court addresses each in turn.

Matau first challenges the discussion of physical surveillance in the affidavits. As with most, if not all, of the critiques Matau raises with the government's use (or lack thereof) of traditional surveillance techniques, his arguments with respect to physical surveillance ignore the purpose of the wiretaps. Put simply, while physical surveillance may have informed law enforcement on the movement and location of target individuals, it would not alone have informed as to the "nature and scope" of the target individuals' drug trafficking–one of the "principal goals" of the wiretap applications. *See* 7/12/2016 Aff. of SA Koch at ¶ 191, Dkt. No. 719-4. Nothing short of the targets trafficking in the open would have even come close to revealing that via physical surveillance. And Matau submits no evidence of that occurring with respect to anyone targeted by the investigation, much less himself or Ieremia. In addition, the Court notes that, while Matau recites numerous purportedly "successful" surveillance efforts on certain individuals, *see* Dkt. No. 719 at 33-34, only one concerns Ieremia–the subject of the wiretaps at issue here– and, at most, that surveillance reflects that law enforcement was able to discern that Ieremia had driven to an automobile repair shop and back to a residence. 9/6/2016

FBI Physical Surveillance Log, Dkt. No. 719-11; 8/4/2016 Aff. of Special Agent Joseph Atneosen at ¶ 40, Dkt. No. 719-10. To the extent such surveillance can be considered "successful," it does nothing to obviate the necessity of the wiretaps on Ieremia's telephones or suggest that anything relevant was misstated or omitted in the affidavits.

Next, Matau makes various arguments concerning the use (or lack thereof) of cell phone data. He argues that the affidavits were misleading in discussing the government's inability to use cell phone data to track targets because the government had not attempted that technique. He further argues that the government did not apply for a warrant to search his cell phone until after the wiretap applications were approved. And he argues that the affidavits falsely stated that the government was unable to fully identify members of the drug conspiracy because telephone numbers may not be subscribed to the person using them.

Again, these arguments in large part miss the point of the wiretaps. As the July 2016 affidavit itself stated, identifying a target's location "does not necessarily reveal their activities, with whom they are meeting, the nature of any items exchanged, and the degree to which the [subjects] are participating in the Specified Federal Offenses." 7/12/2016 Aff. of SA Koch at ¶ 230. The fact that the government purportedly had not attempted this tracking technique, thus, is of little meaningful import, given the explanation provided in the affidavit regarding the

13

purposes of the wiretap and the likelihood of tracking accomplishing those purposes. Similarly, while Matau asserts that, if the government had retrieved the data stored on his cell phone earlier, the government could have learned about multiple contacts with Ieremia and others between May and July 2016, this alleged knowledge would not have informed the government about the nature of those contacts, including the degree of their participation in the drug conspiracy. Nor does Matau explain how the government could have accomplished the physical seizure and search of his cell phone without that event effectively terminating the investigation – and doing so prematurely.

As for Matau's assertion that the affidavits made false statements about identifying individuals through the use of cell phone records, it is entirely inaccurate. Notably, although Matau asserts that his cell phone number was registered in his name, the exhibit to which he cites to support this assertion shows something very different. The exhibit shows the "customer" and "subscriber" name to be "Jeremiah Jeddy," *not* Jeremiah Matau. *See* Dkt. No. 719 at 39 (citing Dkt. No. 719-22). As the government asserts in its motion to dismiss, this is something the July 2016 affidavit accurately explained. *See* Dkt. No. 725 at 26-27 (citing 7/12/2016 Aff. of SA Koch at ¶ 164). In addition, although Matau *asserts* that cell phone data was utilized to implicate targets including himself and Ieremia, he *actually* provides no example of how cell phone data was used to implicate

14

Ieremia–the subject of the wiretaps at issue here. *See* Dkt. No. 719 at 38-39. *Cf. United States v. Reed*, 575 F.3d 900, 911 (9th Cir. 2009) (explaining that "the government has no duty to establish necessity as to each possible interceptee. It is sufficient that there was necessity to tap the phone.") (quotation and alterations omitted); *see United States v. Edwards*, 943 F. Supp. 2d 125, 126, 128-129 (D.D.C. 2013) (citing *Reed*, explaining that a co-defendant's telephone numbers had been intercepted, and denying the defendant's motion to suppress because the government only needed to show that traditional investigative techniques would not disclose the full scope of the co-defendant's organization).

Next, Matau argues that the July 2016 affidavit falsely stated that the government had not "located important locations" where search warrants could be executed. As an initial matter, this is <u>not</u> what the affidavit stated. Instead, the affidavit stated that search warrants were inappropriate because not *all* locations had been identified. 7/12/2016 Aff. of SA Koch at ¶ 225. In any event, Matau's argument in this regard–that certain searches would have uncovered material evidence–ignores the statement in the affidavit that "conducting such searches would make the investigation overt in most cases and therefore may cause the [subjects] to take steps to both avoid the scrutiny of and to flee from law enforcement." *See id*. Moreover, as the government asserts, the search warrant for one of the locations Matau believes should have been searched earlier *relies* in

15

part upon intercepted communications. *See* Dkt. No. 725 at 45 (citing 8/4/2016 Aff. of Special Agent James Mitchell at ¶ 18, Dkt. No. 725-12).

Finally, Matau argues that the June and July 2016 affidavits were misleading in minimizing the usefulness of subpoenas to obtain wire transfer and flight records. He also argues that the affidavits failed to mention whether methods of financial investigation had been attempted. As for the former contention, again, Matau misperceives the purpose of the wiretaps. While wire transfer and flight records may have suggested that Ieremia or any other subject was somehow connected to the drug conspiracy,[5] they do not provide any color as to that connection, such as the manner or scope of an individual's role. *See* 7/12/2016 Aff. of SA Koch at ¶ 224 (explaining that subpoenas would not be a promising method of identifying, *inter alia*, the roles played by participants). With respect to the latter contention, as the Court explained in the 2018 Order, the wiretap statute does not require the government to "exhaust every conceivable alternative before obtaining a wiretap." 2018 Order at 20 (quotation and citation omitted). Moreover, while Matau asserts that, when the government did attempt a financial investigation, it discovered numerous cash transactions and information indicating the purchase of a car used by

---

[5] Equally, alone, wire transfer and flight records may suggest no connection to an illegal activity, something which Matau may argue at trial if, as he suggests, these records "will be key evidence[.]"

16

Ieremia, he fails to explain how any of this information would have obviated the necessity of a wiretap to assist in explaining what the foregoing meant.

In summary, none of the statements or omissions that Matau identifies in the second motion to suppress were false, a misrepresentation, or material. As such, even on a renewed review, the Court finds that the wiretap applications and affidavits at issue here contained a "full and complete statement" supporting issuance of the two wiretap orders. *See Rodriguez*, 851 F.3d at 938.[6]

### 3. <u>Necessity</u>

Other than the arguments addressed above, Matau makes no argument as to either why the issuing judges abused their discretion in issuing the wiretap orders at issue here or why this Court should reconsider its earlier decision that there was no abuse of discretion in issuing those orders. As such, having addressed and rejected

---

[6]Although not discussed above, in the second motion to suppress, Matau cites to, among other cases, *United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005), and *United States v. Carneiro*, 861 F.2d 1171 (9th Cir. 1988). The reason those cases are not mentioned above is that, even though Matau spends some time discussing the cases, *see* Dkt. No. 719 at 25-30, he fails to apply the same to the facts of this case, *see generally id*. at 31-42. There is good reason for this omission: neither is applicable here. Both cases involve wiretap applications seeking to intercept telephone calls of a target different than the target against whom a wiretap application had already been approved. *Gonzalez, Inc.*, 412 F.3d at 1106-07; *Carneiro*, 861 F.2d at 1177-82. In other words, the government sought to intercept Target B's telephone after intercepting Target A's. In those cases, the Ninth Circuit disapproved of the government's conduct because, in essence, it had "attempted to shoe-horn" the investigatory work done on Target A to "cover its failure" to do sufficient investigative work on Target B. *Gonzalez, Inc.*, 412 F.3d at 1115; *see also Carneiro*, 861 F.2d at 1181-82. Here, however, with respect to the relevant telephone numbers subject to the June and July 2016 wiretap applications, there is no Target B. Instead, there is only a Target A–Ieremia–as he is the target for each of the three relevant telephone numbers (TT13, 14, and 15). The Court attempted to explain this material difference during the March 13, 2020 oral argument on the second motion.

all of Matau's arguments above, the Court finds no reason to reconsider its decision in the 2018 Order.

### 4. <u>Evidentiary Hearing</u>

Both parties agree that a "substantial preliminary showing" must be made to justify an evidentiary hearing on the issues in the second motion to suppress. *See* Dkt. No. 719 at 23; Dkt. No. 725 at 36-37. Matau has made no showing—let alone a substantial one—that an evidentiary hearing is needed here. Substantively, Matau asserts that an evidentiary hearing should be held "to discern whether the false statements were intentional and/or reckless…." Dkt. No. 719 at 41-42. As discussed above, however, none of the statements upon which Matau relies were false. Thus, there is no need for the Court to discern whether the statements were made intentionally or recklessly. Although the lack of substantive merit to Matau's arguments defeats any need for an evidentiary hearing, his request is also procedurally misplaced. Notably, other than Matau's exhibit and witness list naming SA Koch as a witness, there is no record of Matau making *any* effort to obtain SA Koch's presence at the March 13, 2020 hearing. Matau, for instance, neither subpoenaed SA Koch, pursuant to Federal Rule of Criminal Procedure 17, nor even requested his appearance through the United States Attorney's Office.[7]

---

[7] In light of the discussion herein, however, Matau's failure to make any attempt to ensure the appearance of a witness at the March 13, 2020 hearing is not harmful, given that Matau has failed to show any entitlement to an evidentiary hearing.

# CONCLUSION

For the foregoing reasons, Matau's second motion to suppress wiretap evidence, Dkt. No. 719, is DENIED. The government's motion to dismiss, Dkt. No. 725, is DENIED AS MOOT.

IT IS SO ORDERED.

DATED: March 20, 2020 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*United States v. Matau,* Case No. 16-cr-00744-DKW-6; **ORDER (1) DENYING DEFENDANT JEREMIAH MATAU'S SECOND MOTION TO SUPPRESS WIRETAP EVIDENCE, AND (2) DENYING AS MOOT THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**